IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

N.A. Timmerman, Inc.,

      Plaintiff,

v.                                                                Case No. 19-cv-1311-JWL

OKC West Livestock Market, LLC,

      Defendant.

## MEMORANDUM & ORDER

Plaintiff N.A. Timmerman, Inc. filed suit in state court for breach of warranties in connection with cattle purchases made at a cattle auction conducted by defendant OKC West Livestock Market, LLC in Oklahoma. Defendant filed a motion to dismiss the case for lack of personal jurisdiction, the parties engaged in limited discovery with respect to jurisdictional issues, and the motion was set for a hearing in January 2020. While the motion was pending, defendant removed the case to this court based on diversity of citizenship. Upon removal, the court confirmed that jurisdictional discovery was complete and permitted supplemental briefing on the motion to dismiss. This matter is now ripe for resolution. As will be explained, defendant's motion to dismiss for lack of personal jurisdiction (doc. 5) is granted.

**I.**     **Standard**

Although a plaintiff bears the burden of establishing personal jurisdiction over a defendant, *see OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir. 1998), in the preliminary stages of litigation this burden is "light." *See Intercon, Inc. v. Bell Atlantic Internet Solutions,*

*Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000) (quoting *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995)). Where, as here, there has been no evidentiary hearing, and the motion to dismiss for lack of personal jurisdiction "is decided on the basis of affidavits and other written material, the plaintiff need only make a prima facie showing that jurisdiction exists." *See id*. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. *See id*. Moreover, if the parties present conflicting affidavits, "all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *See id*.

In *Marcus Food Co. v. DiPanfilo*, 671 F.3d 1159 (10th Cir. 2011), the Tenth Circuit reaffirmed the following standards governing this court's analysis of the issue of personal jurisdiction over a defendant:

> Where a federal lawsuit is based on diversity of citizenship, the court's jurisdiction over a nonresident defendant is determined by the law of the forum state. The party seeking to establish personal jurisdiction over a foreign defendant must make two showings: first, that the exercise of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment. Kansas's long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process principles. Consequently, this court need not conduct a statutory analysis apart from the due process analysis.
>
> The due process analysis is also two-fold: First, [the defendant] must have "minimum contacts" with the forum state, demonstrating that he purposefully availed himself of the protections or benefits of the state's laws and should reasonably anticipate being haled into court there. . . .
>
> If [the defendant] is found to have the requisite minimum contacts with Kansas, then we proceed to the second step in the due process analysis: ensuring that the exercise of jurisdiction over him does not offend traditional notions of fair play and substantial justice. [The defendant] bears the burden at this stage to present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

2

*See id.* at 1166-67 (citations and internal quotations omitted). The Supreme Court has recognized that the minimum-contacts standard may be satisfied by showing either general jurisdiction, which allows for jurisdiction over the defendant for any claim, or specific jurisdiction, which allows for jurisdiction over the defendant only for suits arising out of or related to the defendant's contacts with the forum state. *See Bristol-Myers Squibb Co. v. Superior Ct. of Calif.*, 137 S. Ct. 1773, 1779-80 (2017).

**II.     Background**

Plaintiff N.A. Timmerman, Inc. operates a feedlot in Colby, Kansas. Defendant OKC West Livestock Market, LLC is an Oklahoma limited liability company that owns and operates a cattle sale barn in El Reno, Oklahoma. At its sale barn, defendant acts as an auctioneer for sellers from various states who have transported their cattle for auction. Plaintiff frequently purchases cattle from auctions conducted at sale barns and does so through purchasing agents, or "order buyers," who are physically present at the auction while communicating with plaintiff's agents by telephone. When plaintiff purchases cattle from one of defendant's auctions, plaintiff utilizes Drew Hays, an Oklahoma resident, as its purchasing agent. Mr. Hays owns Hays Cattle Company and he serves as a purchasing agent for plaintiff as well as other cattle buyers.

On February 20, 2019, Mr. Hays attended a cattle auction at defendant's sale barn. During the auction, Mr. Hays communicated by telephone with plaintiff's agents. Defendant did not know that Mr. Hays was bidding on cattle on behalf of plaintiff. Mr. Hays ultimately purchased cattle during the bidding process. The evidence reflects that defendant invoiced Mr. Hays for the

cattle and that Mr. Hays paid those invoices with a check drawn on Hays Cattle Company's account. The following day, Mr. Hays invoiced plaintiff for the cattle and plaintiff paid Mr. Hays by wire transfer.

The evidence demonstrates that all buyers at defendant's sale barn are required to arrange their own livestock transportation from El Reno. Thus, plaintiff had arranged and paid for the shipping of the cattle to its feedlot in Colby, Kansas. Mr. Hays provided defendant with written shipping instructions for the cattle. Those written instructions included a reference to plaintiff N.A. Timmerman, Inc. and noted the final destination as Colby, Kansas. Defendant's general manager, Bill Barnhart, does not recall whether he saw the shipping instructions indicating that the cattle were going to Kansas. It is likely that one of defendant's clerical employees saw that information when preparing a "gate order." A "gate order" is a document that defendant gives to each trucker who is hauling cattle out of the yard after an auction. The gate order shows the headcount, the destination and the current pen location of the cattle and authorizes the trucker to move those cattle out of the yard and to leave the premises with those cattle.

Plaintiff directs the court to no evidence that defendant advertises its auction services in Kansas or has otherwise solicited or targeted business or sales in Kansas in any respect. There is no evidence that defendant holds itself out as doing business in Kansas. In fact, there is no evidence that defendant is conducting any business in Kansas. All sales are conducted in El Reno, Oklahoma. To the extent Kansas residents are purchasing cattle at defendant's sale barn in Oklahoma either directly or through order buyers, the evidence suggests only that such sales are initiated by Kansas residents and not by defendant.

## III. Discussion

Plaintiff argues that defendant has sufficiently systematic contacts with Kansas that it is subject to general jurisdiction here and, in any event, that the court may exercise specific jurisdiction over defendant with respect to these particular claims.[1] As explained below, the court cannot exercise general jurisdiction over defendant because its contacts with Kansas are not "so continuous and systematic as to render it essentially at home" in Kansas. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). And the court cannot exercise specific jurisdiction over defendant because plaintiff has not shown defendant purposefully directed its activities at plaintiff or Kansas. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). The court, then, lacks personal jurisdiction over defendant.

*General Jurisdiction*

General personal jurisdiction means that a court may exercise jurisdiction over an out-of-state party for all purposes. *See Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014). "A court may assert general jurisdiction over foreign . . . corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "Because general jurisdiction is not related to the events giving

---

[1] Because defendant does not argue that jurisdiction would be unreasonable here under the second step of the due process analysis, the court considers only the first step, which requires minimum contacts with Kansas.

5

rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *Old Republic Ins. Co. v. Continental Motors, Inc.,* 877 F.3d 895, 904 (10th Cir. 2017) (quoting *Benton v. Cameco Corp.,* 375 F.3d 1070, 1080 (10th Cir. 2004)). Invoking general jurisdiction brings with it a high burden. *See Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed. Appx. 86, 95 (10th Cir. 2012).

In support of its argument that the court may exercise general jurisdiction over defendant, plaintiff contends that defendant has sold nearly 400,000 head of cattle "into Kansas" since 2017, representing about one-third of defendant's total sales during that period. According to plaintiff, defendant's substantial cattle sales to Kansas residents is sufficient to establish general jurisdiction. The court rejects this argument. Importantly, the evidence in the record does not support plaintiff's suggestion that defendant sold or shipped 400,000 head of cattle to Kansas residents since 2017. Rather, the evidence demonstrates that 400,000 head of cattle sold at defendant's auctions since 2017 were ultimately shipped to Kansas. While defendant undoubtedly sold some of those cattle to Kansas residents who came to El Reno, Oklahoma to bid on cattle at defendant's sale barn, some of those cattle were sold to buyers like Mr. Hays—purchasing agents who are not Kansas residents but who bid on cattle on behalf of Kansas residents. And either way, there is no evidence that defendant shipped or transported any cattle to Kansas. The evidence demonstrates that buyers are required to arrange their own livestock transportation from El Reno. There is no evidence that defendant coordinates or is otherwise responsible for the shipment or delivery of cattle purchased at its auctions beyond the preparation of gate orders. In other words, while the evidence supports the fact that 400,000 head of cattle from defendant's auctions were

ultimately shipped to Kansas, the evidence does not support the idea that defendant sold or shipped 400,000 head of cattle directly to Kansas residents.

Moreover, even assuming that plaintiff's evidence established that defendant sold 400,000 head of cattle directly to Kansas residents, those substantial sales would not support general jurisdiction in the particular context of this case. The Tenth Circuit has cautioned that, when dealing with general jurisdiction, "commercial contacts . . . must be of a sort 'that approximate physical presence' in the state—and engaging in commerce with residents of the forum state is not in and of itself the kind of activity that approximates physical presence within the state's borders." *Shrader v. Biddinger*, 633 F.3d 1235, 1243 (10th Cir. 2011). The nature of the sales reflected in the record is simply not the kind of activity that approximates defendant's physical presence in the state. Plaintiff directs the court to no evidence that defendant advertises its auction services in Kansas or has otherwise solicited or targeted business or sales in Kansas in any respect. There is no evidence that defendant holds itself out as doing business in Kansas. In fact, there is no evidence that defendant is conducting any business in Kansas. All sales are conducted in El Reno, Oklahoma. To the extent Kansas residents are purchasing cattle at defendant's sale barn in Oklahoma either directly or through order buyers, the evidence suggests only that such sales are initiated by Kansas residents and not by defendant. Finally, there is no evidence that defendant has control over the identity or residence of the highest bidder in any of its auctions—defendant, then, is not purposefully selling cattle to Kansas residents. *See Trierweiler v. Croxton & Trench Holding Corp.*, 90 F.3d 1523, 1533 (10th Cir. 1996) (listing factors courts have considered in evaluating general jurisdiction, including whether corporation solicits business in the state; holds

itself out as doing business in the state through advertisements or bank accounts; and the volume of business conducted in the state).

In light of these circumstances, it is clear that defendant's contacts with Kansas fall short of those necessary to meet the high burden of demonstrating general jurisdiction. *See, e.g.*, *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-17 (1984) (finding Texas courts lacked general jurisdiction over the defendant company despite the company having spent more than $4 million to purchase 80% of its helicopters and parts from Texas sources over a 7-year period and despite the company having sent its pilots, management, and maintenance personnel for training in Texas over a period of years). In an analogous case, Judge Marten of this District reached the same conclusion. *See Berry v. Ulrich Hereford Ranch, Inc*., 2017 WL 3130589 (D. Kan. 2017). In *Berry*, a Kansas resident purchased cattle at an auction in Alberta, Canada through a third party who was present at the auction while the Kansas resident communicated to the third party from Kansas. 2017 WL 3130589, at *1-2. When those cattle became sick, the Kansas resident sued a number of defendants, including the Canadian auction services company who conducted the auction. *Id*. at *1. On a motion to dismiss for lack of personal jurisdiction, Judge Marten held that the court could not exercise general jurisdiction over the auction services company because that company did not solicit business in Kansas through a local office or agents; did not hold itself out as doing business in Kansas through advertisement, listings or bank accounts; and had no business conducted in Kansas. *Id*. at *4. In essence, Judge Marten held that the Canadian auction services company could not be considered "at home" in Kansas. *Id*.

For the foregoing reasons, the court may not properly exercise general jurisdiction over defendant.

*Specific Jurisdiction*

A court may exercise specific personal jurisdiction over a defendant if a defendant has "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities. *Th Agric. & Nutrition, LLC v. Ace European Group Ltd.*, 488 F.3d 1282, 1287 (10th Cir. 2007) (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985)). With respect to the first requirement, "purposeful direction ensures that defendants will not be haled into court in foreign jurisdictions solely as a result of 'random, fortuitous, or attenuated contacts.'" *Dental Dynamics, LLC v. Jolly Dental Group, LLC*, __ F.3d ___ (10th Cir. Jan. 9, 2020) (quotation omitted). The mere foreseeability of causing injury in another state is insufficient on its own to establish purposeful direction. *Id.* (citation omitted). With respect to the second requirement, ensuring the injury arises out of a defendant's forum related activities makes sure an adequate connection exists between the forum and the underlying controversy. *Id.*[2] When analyzing specific personal jurisdiction in the breach-of-contract context, the court looks to the defendant's

> continuing relationships with the forum state and its residents. Although contractual obligations may create sufficient ties to establish jurisdiction, an out-of-state resident's contract with a resident of the forum state is insufficient, standing alone, to create personal jurisdiction. In *Burger King*, the Supreme Court eschewed such "mechanical" tests in favor of looking to the "business negotiations," "future consequences" of the contract, and the "actual course of dealing" between the parties. *Burger King*, 471 U.S. at 478–79.

---

[2] The court resolves this motion on the purposeful direction requirement alone.

*Id.* (citations and quotations omitted).

In support of its argument that the court may exercise specific jurisdiction over defendant, plaintiff contends that defendant entered into three separate contracts with plaintiff on February 20, 2019 for the sale of cattle. The contracts submitted by plaintiff, however, expressly indicate that Drew Hays was the buyer of the cattle. Plaintiff is not mentioned in these documents. Plaintiff was not present at the sale barn on February 20, 2019. It is undisputed that Mr. Hays paid for the cattle with a check drawn on Hays Cattle Company's bank account and that Mr. Hays invoiced plaintiff for the cattle on the following day. Plaintiff then paid Mr. Hays for the cattle. Significantly, defendant did not negotiate with plaintiff over any terms; did not deal directly with plaintiff in connection with the February 20, 2019 cattle sales; and nothing in those transactions reflected any long-term or continuing obligations with plaintiff or Kansas. The evidence reflects that defendant's contacts with plaintiff were attenuated and insufficient to establish specific jurisdiction over defendant. *See Dental Dynamics*, ___ F.3d at ___ (no purposeful direction where parties' business relationship comprised three transactions over nine years; none were negotiated in person; each transaction was a discrete occurrence and involved isolated sales of pieces of equipment without any long-term or continuing obligations involving Oklahoma); *Old Republic Ins. Co. v. Continental Motors, Inc.*, 877 F.3d 895, 910 (10th Cir. 2017) (finding no purposeful direction even where a contract with a forum-state entity was accompanied by the parties' contemplation of "some potentially ongoing consequences" because the record lacked evidence of "any significant course of dealing" or long-term contractual commitments associated with the forum state); *Berry*, 2017 WL 3130589, at *9 (no specific jurisdiction over cattle auction company

10

based in Canada where plaintiff, a Kansas resident, utilized third party to make purchases; auction company had no communications or negotiations with plaintiff until long after sale; and no payment was exchanged between auction company and plaintiff); *Cody v. Arnett*, 2009 WL 2843356, at *2 (E.D. Okla. 2009) (no specific jurisdiction over cattle auction company located in Kentucky that sold cattle to Kentucky-based order buyer who was purchasing cattle on behalf of plaintiff, an Oklahoma resident; auction company did not know that order buyer was purchasing on behalf of Oklahoma resident at time of sale, had no direct business dealings with plaintiff and had no interest in the contract between the order buyer and plaintiff).

Alternatively, plaintiff says defendant knew that Mr. Hays was buying cattle on behalf of plaintiff on February 20, 2019, rendering the transaction a purposeful contact on the part of defendant. The record does not support this contention. Both Mr. Hays and Bill Barnhart, defendant's 30(b)(6) witness, testified that defendant did not know at the time of the February 20, 2019 sales that Mr. Hays was purchasing those specific cattle on behalf of plaintiff. Viewing the evidence in the light most favorable to plaintiff, defendant realized that Mr. Hays was selling the cattle to plaintiff at the end of the day on February 20, 2019, to the extent defendant's clerk paid any attention to the shipping instructions left by Mr. Hays as reflected in the gate order. Those instructions indicate that the cattle were heading to plaintiff's Colby, Kansas address. But those instructions were admittedly post-sale instructions. But even accepting plaintiff's argument that defendant knew that Mr. Hays was buying the cattle for plaintiff, the key facts concerning the parties' alleged contractual relationship remain unchanged—that is, defendant did not negotiate with plaintiff over any terms; did not deal directly with plaintiff in connection with the February 20, 2019 cattle sales; and nothing in those transactions reflected any long-term or continuing

11

obligations with plaintiff or Kansas. There is no evidence that defendant or plaintiff contemplated anything other than minimum, short-term obligations arising out of the cattle sales.

Lastly, plaintiff contends that the court may exercise specific jurisdiction over defendant because it derived substantial economic gain from the February 20, 2019 cattle sales even if those sales were not made directly to plaintiff. Nonetheless, any economic gain enjoyed by defendant does not establish in this context that defendant aimed its auction activities at plaintiff or Kansas in the absence of evidence that defendant engaged in any effort to obtain business or bidders from Kansas. *See Cody v. Arnett*, 2009 WL 2843356, at *2 (even though auction company profited from the sale of cattle to order buyer who ultimately sold cattle to plaintiff, any relationship with plaintiff arising therefrom too collateral to impose personal jurisdiction); *see also World–Wide Volkswagen Corp.*, 444 U.S. 286, 299 (1980) ("[F]inancial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State. In our view, whatever marginal revenues petitioners may receive by virtue of the fact that their products are capable of use in Oklahoma is far too attenuated a contact to justify that State's exercise of in personam jurisdiction over them.").[3]

In sum, defendant's contacts with Kansas were the result of the fortuitous fact that Mr. Hays, an Oklahoma resident, was the highest bidder on the subject cattle and the fact that Mr.

---

[3] Plaintiff also suggests that personal jurisdiction over defendant is appropriate because plaintiff, as a result of defendant's breach of warranties, suffered economic loss in Kansas. But that argument goes to whether the lawsuit arises out of defendant's activities aimed at Kansas rather than whether defendant aimed its conduct at Kansas in the first instance. *See Eighth District Electrical Pension Fund v. Power Foundations, LLC*, 2019 WL 5784943, at *5 (D. Colo. 2019) (suggesting that in breach of contract actions, economic ramifications are pertinent in analyzing whether cause of action emanates from defendant's conduct aimed at forum state);

Hays, unbeknownst to defendant, was purchasing those cattle for a Kansas resident.  Defendant did not seek out plaintiff as a potential buyer or bidder; did not purposefully sell cattle to plaintiff or otherwise conduct business with plaintiff; did not negotiate any contract with plaintiff; and did not communicate with plaintiff at any time leading up to or at the time of the sale.  Plaintiff has not established purposeful direction on the part of defendant.  *See Hanson v. Denckla*, 357 U.S. 235, 253 (1958) ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.")

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to dismiss for lack of jurisdiction (doc. 5) is granted.

**IT IS SO ORDERED.**

Dated this 22nd day of January, 2020, at Kansas City, Kansas.

                                                s/ John W. Lungstrum
                                                John W. Lungstrum
                                                United States District Judge